HENRY FEUERSTEIN v. JEFFERSON C. JACKSON AND WILLIAM WILBY v. HENRY FEUERSTEIN.

1. VERDICT FOR DAMAGES NOT SUSTAINED BY EVIDENCE.

Where plaintiff consented to the cutting of the grade on the street in front of his premises to a depth of twenty-four inches and the defendant cut to a depth of five feet, a judgment for the total damage done by the whole cutting cannot be sustained.

2. CHARGE THAT VILLAGE AUTHORITIES PASSED RESOLUTION TO LOWER A GRADE, RELEASED DEFENDANT FROM PREVIOUS CUTTING OF THE GRADE ERRONEOUS.

In an action for damages tor cutting down a grade, the charge of the court that while defendant may have unlawfully cut down the street, yet if the authorities of the village afterward adopted a resolution to lower the grade still more, and plaintiff could not recover damages therefor against the village, that defendant would also be free from liability, is erroneous.

3. MEMBER OF A BOARD CANNOT TESTIFY AS TO WHAT BOARD EXPECTS TO DO.

A member of the board of village-trustees cannot testify that the board expect to adopt a grade, on a certain street, without delay, for he cannot bind the board.

ERROR to the Court of Common Pleas of Hamilton county.

SMITH, J.

These two cases, though not presenting the same questions, are in regard to the same subject-matter, and were heard together.

The only question presented in the first of the two cases is whether the trial court erred in overruling the motion for a new trial, based on the ground that the verdict of the jury was against the weight of the evidence.

The action below was by Jackson against Feuerstein to recover damages for the wrongful cutting down of a street in the hamlet of Arlington, in this county, on which plaintiff's property abutted, and which cutting, as was claimed, was to the depth of three to five feet, injuring the access to the property of plaintiff, and in other ways causing great injury thereto. The claim of the defendant was that the cutting was done by the express authority of the plaintiff, and that in fact it did not injure the property of the plaintiff, but greatly benefited it.

It was clearly shown by the evidence that some two or three years before this work was done, the defendant had laid out a subdivision in Arlington, and dedicated Ogden street to the use of the public. He sold some lots abutting thereon, and retained others. Among others he sold the lot now owned by plaintiff, and the grantee built a good house thereon, and sold it to plaintiff, who graded his lot to conform to the grade of the street in front of it, which street had not then been improved except slightly by the defendant; and that it was then in good condition. The defendant being desirous of cutting down the street so as to improve and benefit the lots retained by him, which were generally lower than that of the plaintiff, applied to quite a number of the owners of lots abutting thereon, for the privilege of doing so, and they generally consented and agreed to make him small donations to assist in the work. Among others, the plaintiff consented and agreed, as he claims, that defendant might lower the grade of the roadway in front of his lot 18 to 24 inches, and to contribute five dollars to ten dollars thereto. There is conflict in the evidence on the point whether the consent was limited to the cutting not to exceed two feet, but the jury having found in favor of the plaintiff, we think we are not warranted in finding that the weight of the evidence was that it was not limited to two feet.

But the evidence further shows that the cut in front of plaintiff's lot was greater than this; that it was from three to five feet. And it is clear that if such excess of cutting damaged the property of plaintiff, the defendant would

be liable for the damage so caused by such excess, unless the defendant, by his conduct during the time the work was being done, sanctioned it and thus deprived him of the right to look to the defendant for the damages caused thereby. We think the evidence did not show that such was the case.

If, therefore, it appeared from the bill of exceptions that the evidence submitted to the jury showed that the damage sustained by the plaintiff for this excessive cutting was, as found by the jury, $300, we would be of the opinion that the judgment should be affirmed, for the defendant had no legal right to cut this street down at all, and if any damage resulted to an abutting proprietor he was responsible for it, unless he had done so with the consent of such lot holder, express or implied. But if he had obtained the consent of such lot holder to cut down the street two feet, he is not liable for any damages caused to him thereby. And if he cut deeper than he was so authorized to do, he would be liable only for the damage caused by the unauthorized cutting.

The difficulty in this case is that there was no evidence whatever directed to this point. Evidence was received as to what damage resulted to plaintiff from the whole cutting done; but there is nothing to indicate or show to the jury how much of this was attributable to the excessive cutting, and consequently there was no evidence which justified the finding of $300. For this reason the judgment must be reversed, and a new trial awarded.

In the second case, that of *Wilby* v. *Feuerstein*, the plaintiff was the owner of two lots abutting on the same street, which lots had no buildings on them. The allegations of the petition were that the defendant wrongfully and illegally cut down said street in front of plaintiff's property to the depth of six feet, causing plaintiff's lots to cave in and be greatly damaged, and cutting off his access to his lots, whereby he has been damaged in the sum of $300. The answer of the defendant admitted that plaintiff owned the lots, but denied all of the other allegations of the petition.

The same evidence was offered in this case as in the other, but there was no claim that defendant had done this work upon the street with the consent, or knowledge even, of the plaintiff. But the claim was made on the part of the defendant that he was not liable to the plaintiff for any damage caused to him by cutting down the street, if any such resulted (which was denied), for the reason that some time after the cutting was done, and during the pendency of his action, the hamlet of Arlington, by its officers, had established the grade of this street one foot lower than it was after it was cut down by the defendant, though no further action had been taken by the authorities to improve the street to this grade.

At the trial several objections were made by the plaintiff below to the admission of evidence by the court, and exceptions to the rulings duly noted. Among others, a witness was permitted to testify that the grade established by the board was a reasonable and proper one, thus giving his opinion on that point, and not the facts from which the jury might determine whether it was or was not. Other witnesses were allowed to say that the cutting down of the roadway did no damage to the property abutting on the same, but improved it, and in some cases that it increased the value of each lot from $100 to $200. This we understand to be opposed to the decisions of the Supreme Court in *R. R. Co.* v. *Campbe'l*, 4 O. S., 583; *Railroad* v. *Ball*, 5 O. S., 568; *R. R. Co* v. *Gardner*, 45 O. S., 309-323. A trustee of the hamlet was also allowed to say, over exceptions, that although no resolution had been passed by the board to improve the street according to the grade adopted, that they expected to do so without delay. This, we think, was incompetent. *Martin* v. *Bond Hill*, 3 Ohio Cir. Dec., 591.

The court, in the charge given to the jury, as appears from the bill of exceptions, proceeds upon the idea that the evidence showed that Wilby had consented that the defendant should make this cutting to a certain depth, while, as has been stated, it is clear that there was no such agreement. This is accounted for by

the fact that several cases were tried together, and the principal charge given was in the Jackson case, and it was attempted by counsel to make that charge apply to this case. But as to this plaintiff the court, in effect, charged the jury that although the defendant may have unlawfully cut down the street in front of plaintiff's lots, yet if the authorities of the village afterwards, and during the pendency of the suit, adopted a resolution to lower the grade still more, then if the grade was a reasonable one, and if the street were improved to that grade, the plaintiff could not recover damages against the hamlet, that the defendant was entitled to stand on the same footing. We think this was clearly wrong. The defendant was a wrongdoer. He had without authority, violated the rights of the plaintiff, and if plaintiff's evidence was credible, he had sustained damage, and brought his action to recover it. The subsequent establishment of a lower grade by the council, even though a reasonable one, did not inure to the benefit of the plaintiff, particularly if at the time of the trial no such improvement had in fact been made by the board. The defendant must stand on his own footing, and be answerable for his own acts. Whether, if the street was improved by the hamlet under the resolution, it might be shown to affect the amount of the damages, is a question not before us. We think the judgment below should be reversed, and a new trial awarded.

*Von Seggern, Phares & Dewald*, for Feuerstein.
*Wm. E. Bundy*, contra.